FIRST UNION NATIONAL BANK OF NORTH CAROLINA, EXECUTOR UNDER THE WILL OF CECIL PAUL MOSS AND FIRST UNION NATIONAL BANK OF NORTH CAROLINA, EXECUTOR UNDER THE WILL OF HELEN R. MOSS v. DAVID R. MOSS, CAROLYN R. CUMMINGS, GRACE COVENANT PRESBYTERIAN CHURCH, THE BILLY GRAHAM EVANGELISTIC ASSOCIATION, THE NEW YORK THEOLOGICAL SEMINARY, THE PRESBYTERIAN HOME FOR CHILDREN OF BLACK MOUNTAIN, NORTH CAROLINA, INC., ELIDA HOMES, INC., ORTHOPEDIC HOSPITAL AND REHABILITATION CENTER, INC., BOARD OF ANNUITIES AND RELIEF OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES, AND THE UNION THEOLOGICAL SEMINARY IN VIRGINIA

No. 7628SC686

(Filed 16 March 1977)

.1. Wills § 28— construction

Where the intention of a testator is clearly and consistently expressed, there is no need for judicial interpretation of the will; only

where there is ambiguity or uncertainty is it proper for the court to take into consideration the established rules or canons for the construction of wills.

2. **Wills § 40— power of appointment — construction — wills of donor and donee**

The will of the donor of a power of appointment and the will of the donee of the power must be construed together.

3. **Wills § 40— power of appointment — intent of testator — exercise by devisee**

A provision in a husband's will permitting the wife to devise the principal of a marital deduction trust by "specifically referring to this power of appointment" was intended by the husband to require only that the wife distinguish between her own property and the appointive property in order that there be no inadvertent exercise of the power of appointment; and a provision of the wife's will devising property "over which I have or may have any power of appointment" was effective to exercise the power of appointment given her by the husband's will where it is evident that she was concerned only with such power of appointment since she referred to property under a power of appointment only in the event that her husband died first, and where it is obvious that each spouse knew of the contents of the other's will because the wills were drafted by the same person, were executed on the same day, were witnessed by the same people, and revealed similar concerns.

APPEAL by defendants David R. Moss, Carolyn R. Cummings and The Presbyterian Children's Home of Black Mountain, North Carolina, Inc., from *Martin (Harry C.), Judge.* Judgment entered 3 May 1976, in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 20 January 1977.

Plaintiff, Executor and Trustee under the wills of both Cecil Paul Moss and Helen R. Moss, brings this action to have the two wills construed and to have declared the rights of the parties defendant, beneficiaries under both wills, consisting of the two children of Cecil Paul Moss and Helen R. Moss and various charitable institutions. Both wills were executed at Asheville, North Carolina, on the same day, 12 January 1972, and the subscribing witnesses, one of whom was an attorney, were the same. Much of the language in the two wills, except for the dispositive paragraphs, is identical.

Cecil Paul Moss died 7 June 1972. His will, duly probated and not altered by codicil, is summarized, in pertinent part, except where quoted, as follows:

Items Three and Four provided that his automobile, other tangible personal property, and homeplace were devised to his wife, Helen R. Moss.

Item Five provided for the creation of two trusts. Section 1 created the first, the "wife's share," "which will equal in value the maximum marital deduction allowable." Section 2(a) provided that the income was to be paid to her for life, and Section 2(b) provided that so much of the principal as she directed in writing was to be paid to her free of trust. Section 2(d) provided that upon the death of his wife, the remaining principal was to be transferred and discharged of the trust "to such appointee or appointees of my wife (including my wife's estate) and in such amounts or proportions and upon such terms and provisions as my wife shall appoint and direct in an effective will or codicil *specifically referring to this power of appointment*." (Emphasis added.) If this power of appointment were not "effectively exercised" by his wife, the principal remaining passed as a part of the residuary estate.

Item Five, Section 8 provided for the creation of the second trust from the remainder of the residuary estate. His wife was entitled to the net income therefrom, and, in the discretion of the trustee, to so much of the principal as she needed. Upon her death, the principal, which included the "wife's share" if she did not exercise her power of appointment, would be paid as follows: (a) the sum of $120,000.00 in cash or its equivalent, or one-half of the remainder of the residuary estate, whichever is greater to each of their two children, or issue *per stirpes;* and (b) the balance to be distributed in stated sums or percentages to named persons and charitable institutions.

Helen R. Moss died 31 December 1974. Her will, duly probated and altered by codicil of 14 December 1973 (which had no effect on the provisions in dispute herein, and merely added $15,000.00 from her personal estate to the $20,000.00 bequeathed by her husband to her brother) is summarized in pertinent part, except where quoted, as follows:

Item Three provided that if she predeceased her husband, all of her property would go to him.

Item Four provided that if her husband predeceased her, her tangible personal property would go to her children as deemed for their best interest in the discretion of the Executor,

the balance of the tangible personal property to become a part of her residuary estate.

Item Five provided that after the distribution in Item Four all the residue and remainder of her estate "including any property or estate over which I have or may have any power of appointment" would go to her trustee in trust for the following purposes: (a) one-half to the trustee in perpetuity for the Board of Annuities and Relief, Presbyterian Church, U. S., and (b) the remainder to the trustee in perpetuity for the Union Theological Seminary, Richmond, Virginia.

All parties stipulated that on 1 January 1975, the date of the death of Helen R. Moss, the marital trust created under the will of Cecil Paul Moss had a value of $229,847.64; that on the same date the personal estate of Helen R. Moss (without regard to any power of appointment) had a value of $178,621.67, consisting of a home with a value of $61,110.00, stocks and bonds with a value of $3,891.25, mortgages, notes and cash with a value of $96,140.90, and other miscellaneous property with a value of $17,479.52; and that her personal estate, after payment of debts and estate expenses amounting to $25,343.57, passed under the general residuary clause of her will. It was further stipulated that plaintiff had no knowledge of any power of appointment in Helen R. Moss other than that contained in her husband's will.

The cause was heard by the trial judge on pleadings, stipulations, briefs and arguments of counsel. Judge Harry C. Martin made findings of fact and conclusions of law, including the conclusion that *"Item Five* of the Will of Helen R. Moss effectively executed the power of appointment held by her over the marital deduction trust created by . . . the Will of Cecil Paul Moss."

The plaintiff accepted and confirmed the judgment. David R. Moss and Carolyn R. Cummings, children of testators, and The Presbyterian Children's Home of Black Mountain, North Carolina, Inc. made exceptions to and appealed from the judgment.

*Redmond, Stevens, Loftin & Currie, P.A., by John W. Mason and John S. Stevens for plaintiff appellees.*

*Adams, Hendon & Carson, P.A., by Geo. Ward Hendon and George W. Saenger for defendant appellants, David R. Moss and Carolyn R. Cummings.*

*Shuford, Frue, Sluder & Best by Gary O. Sluder and Ronald D. Brondyke for defendant appellant, The Presebyterian Children's Home of Black Mountain, North Carolina, Inc.*

*Van Winkle, Buck, Wall, Starnes, Hyde and Davis, P.A., by Barry B. Kempson, for defendant appellees, The Union Theological Seminary in Virginia and Board of Annuities and Relief of the Presbyterian Church in the United States.*

CLARK, Judge.

This appeal raises the following issue: Did Helen R. Moss in her will, by devising the remainder of her estate "including any property or estate over which I have or may have any power of appointment," effectively execute the power of appointment given to her by her husband, Cecil Paul Moss, in his will, which required that she "appoint and direct in an effective will or codicil specifically referring to the power of appointment"?

[1, 2] The cardinal rule in interpreting and construing a will, followed in countless North Carolina cases since *Blount v. Johnston,* 5 N.C. 36 (1804), is that the intention of the maker be ascertained if possible. The intention which controls is that which is manifest, expressly or impliedly, from the language of the will. *Kale v. Forrest,* 278 N.C. 1, 178 S.E. 2d 622 (1971); *In re Will of Cobb,* 271 N.C. 307, 156 S.E. 2d 285 (1967); *Weston v. Hasty,* 264 N.C. 432, 142 S.E. 2d 23 (1965); *Dearman v. Bruns,* 11 N.C. App. 564, 181 S.E. 2d 809 (1971); 95 C.J.S. Wills § 586 (1957); 80 Am. Jur. 2d Wills § 1143 (1975). Where the intention is clearly and consistently expressed there is no need for judicial interpretation, and the court must first examine the will and, if possible, ascertain its meaning without reference to rules or canons of construction. *Trust Co. v. Whitfield,* 238 N.C. 69, 76 S.E. 2d 334 (1953). Only where there is ambiguity or uncertainty is it proper for the court to take into consideration the established rules or canons for the construction of wills. *Rhoads v. Hughes,* 239 N.C. 534, 80 S.E. 2d 259 (1954); *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17 (1945); *Williamson v. Cox,* 218 N.C. 177, 10 S.E. 2d 662 (1940). A will which admits of two constructions is ambiguous, for ambiguous simply means capable of being understood in more senses than one. *Moore v. Parrish,* 38 Wash. 2d 642, 228 P. 2d 142 (1951). The will of the donor of a power of appointment and the will

of the donee of the power must be construed together. *In re Price's Will*, 163 N.Y.S. 2d 34, 4 Misc. 2d 1023 (1956) ; *Republic Nat'l. Bank v. Frederick's*, 274 S.W. 2d 431 (Tex. Civ. App. 1954), *rev'd on other grounds* 283 S.W. 2d 39 (Tex. 1955). Joint construction is particularly appropriate in the present case since the two wills were executed on the same day before the same witnesses, one of whom was an attorney, appoint the same executor and contain very substantially identical language except for the dispositive provisions.

[3] We are called upon to construe the term in the will of Cecil Paul Moss which provided that his wife could dispose of the principal of the marital trust by "specifically" referring to the power and the term in the will of Helen R. Moss which devised any property over which she may have "any power of appointment." The word "specifically" usually means explicitly or definitely. *Laman v. McCord*, 245 Ark. 401, 432 S.W. 2d 753 (1968) ; *Straton v. Hodgkins*, 109 W. Va. 536, 155 S.E. 902 (1930). It does not always mean that an item be individually named, and where it is clear that the intention of the drafter is to the contrary; such narrow meaning will not be assigned. *Administrator, F.A.A. v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed. 2d 164 (1975) ; *California v. Richardson*, 351 F. Supp. 733 (D.C. Cal. 1972). The word "any" has a diversity of meanings, and its meaning in a particular case depends on the context or subject matter of the statute or document in which it is used. *State ex rel. Womack v. Jones*, 201 La. 637, 10 So. 2d 213 (1942). As used in a will, "any" may have one of several meanings according to the subject which it qualifies and should be construed in context with other words used in the bequest. *In re Scheyer's Estate*, 336 Mich. 645, 59 N.W. 2d 33 (1953). We conclude that the terms "specifically" and "any" as used in this context are sufficiently ambiguous to allow an examination of the circumstances surrounding the execution of the wills in addition to the four corners of the instruments. *Trust Co. v. Jones*, 210 N.C. 339, 186 S.E. 335 (1936) ; *Adler v. Bank*, 4 N.C. App. 600, 167 S.E. 2d 441 (1969).

The language used in the two wills reveals that the primary concern of Mr. and Mrs. Moss was the security and comfort of the surviving spouse, and secondary concerns were tax savings and charitable contributions. The dispositive provisions of the will of Mr. Moss provided that the income from both the marital deduction and the residuary trust was to go to Mrs. Moss, and

furthermore she was given the absolute and unfettered power to invade the principal of the marital deduction trust during her lifetime and the power to devise it to whomever she wished upon death. Appellants concede that she possessed a general power of appointment. Mr. Moss did not give his wife the minimum power over the marital share that he could have in order to obtain maximum tax benefits. Rather he gave her broad powers over disposition, limited only to the requirement of a specific reference in her will, which powers indicate confidence and trust in her judgment and ability to manage her property. The fact that even if the power were exercised, Mr. Moss elsewhere in his will made generous provision for his children, the other natural objects of his bounty, lends support to the conclusion that he had no intention to restrict his wife unduly in the disposition of the property subject to the power of appointment. *Trust Co. v. Wolfe*, 243 N.C. 469, 91 S.E. 2d 246 (1956) ; 7 Strong, N. C. Index, Wills § 78 (2d Ed. 1968).

The language in the will of Helen R. Moss also exhibits concern for the security of her spouse, for charitable institutions, and for minimizing the tax burden upon her estate. If she predeceased her husband, all of her property was to go to him. The single most significant feature of her will which leads to the conclusion that she intended to exercise the power of appointment created in her husband's will is the distinction that exists between the dispositive provisions if she predeceased him and those if he predeceased her. Item Three provided that if she predeceased her husband, he was to have "all of my property and estate of every kind and wheresoever situate of which I die seized and possessed." Item Five provided that if he predeceased her, she was disposing of "all the rest, residue and remainder of my property and estate, whether real, personal, or mixed, of every nature and wherever situate, *including any property or estate over which I have or may have any power of appointment.*" (Emphasis added.) The fact that Mrs. Moss made reference to property under a power only in the event that her husband died first is evidence that she was concerned only with the power created in his will, and was thereby making special reference to it. Were this boiler-plate language only, it would be included in Item Three as well. The omission in Item Three and inclusion in Item Five is evidence of the specific nature of the language in this context. The language indicates an awareness by Mrs. Moss that only if her husband predeceased

her would she possess two classes of property, (1) property under appointment and (2) her personal estate, and it demonstrates an intention to make a distinction between these two classes of property.

Circumstances attendant the execution of the wills resolve any ambiguity and compel the conclusion that the power was exercised. Both wills were executed on the same day, were witnessed by the same people, contain substantially identical language except for the dispositive provisions, and reveal similar concerns. It is reasonable to infer that the same person drafted the two wills to reflect the common interests and concerns of Mr. and Mrs. Moss, and to infer that each spouse was aware of the contents of the other's will. The fact that a donee of a power was aware of the existence of a power of appointment at the time of the execution of the donee's will is a circumstance which supports the conclusion that ambiguous language in donee's will reflects an intention to exercise the power. 62 Am. Jur. 2d, Powers of Appointment § 49 (1972). The fact that the provision will have no meaning unless it operates to exercise the power is also a circumstance which supports the conclusion that the donee thereby intended to exercise the power. 62 Am. Jur., *supra*, § 51. The size of the two classes of property under the control of Mrs. Moss supports the conclusion that it was the intention of Mr. Moss, the donor, to require only that his wife, the donee, distinguish between the two classes in her will in order that there be no inadvertent exercise of the power.

Considering the circumstances surrounding the execution of both wills and language of both wills, we conclude that it was the intent of Mr. Moss, in requiring Mrs. Moss to effectively execute the power of appointment by "specifically" referring to the power, to require that his wife in her will show her intent to devise both classes of property under her control; and we further conclude that it was the intent of Mrs. Moss to exercise the power of appointment by devising the remainder of her estate "including any property or estate over which I have or may have any power of appointment." The intent of Mr. Moss was to prevent Mrs. Moss from inadvertently exercising the power of appointment. Mrs. Moss made a distinction between her own property and the appointive property and intentionally exercised the power. See *Kirkman v. Wadsworth*, 137 N.C. 453, 49 S.E. 962 (1905).

Plaintiffs call to their aid two statutes, G.S. 31-4 and G.S. 31-43. G.S. 31-4 provides in substance and pertinent part that the failure to satisfy formal requirements imposed by the donor does not make the exercise of the power of appointment ineffective if the appointment is executed in the manner prescribed by law. G.S. 31-43 provides in substance that a general devise shall be construed to include any property which the testator may have power to appoint in any manner he may think proper unless a contrary intention of the donee testator is shown. *Trust Co. v. Hunt,* 267 N.C. 173, 148 S.E. 2d 41 (1966) ; *Walsh v. Friedman,* 219 N.C. 151, 13 S.E. 2d 250 (1941) ; *Johnston v. Knight,* 117 N.C. 122, 23 S.E. 92 (1895).

Appellants deny the applicability of these statutes, and cite in support several cases, which we have carefully examined. We do not deem it necessary to rule upon the applicability of these two statutes and cases cited in view of our conclusion that it was the intent of Mr. Moss to require only that Mrs. Moss avoid an inadvertent disposition of the appointed property by referring to the power, and that she complied with this requirement by referring to "any property . . . over which I have or may have any power of appointment."

The defendants David R. Moss and Carolyn R. Cummings also except to the findings of the trial court that The Board of Annuities and Relief and The Union Theological Seminary are qualifying charities under Section 2055 of the Internal Revenue Code of 1954, as amended. In making these findings the trial court took judicial notice of certain sections of the Internal Revenue Code. Judicial notice may be taken of the public laws of the United States and of important administrative regulations having the force of law. 1 Stansbury, N. C. Evidence § 12 (Brandis Rev. 1973) ; 29 Am. Jur. 2d Evidence, § 39 (1967). This assignment of error is overruled.

The judgment of the trial court is

Affirmed.

Judges VAUGHN and HEDRICK concur.